70 F.3d 637
 315 U.S.App.D.C. 76
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CAREER COLLEGE ASSOCIATION, Appellant,
v.
Richard W. RILEY, et al., Appellees.
 No. 94-5213.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 29, 1995.
 
 Before: GINSBURG, HENDERSON and RANDOLPH, Circuit Judges
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record from the United States District Court for the District of Columbia and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and has determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 The appellants challenge a Department of Education (Department) regulation implementing a 1992 amendment to title iv of the Higher Education Act of 1965. Before 1992, a for-profit trade school, or "proprietary institution of higher education," was eligible for title iv student funding if the school satisfied five requirements.[1] In its 1992 amendments to title iv Congress added a sixth prerequisite: that the school "ha[ve] at least 15 percent of its revenues from sources that are not derived from funds provided under [subchapter iv of chapter 28 of title 20] and part C of subchapter I of chapter 34 of Title 42, as determined in accordance with regulations prescribed by the Secretary of Education." Higher Education Amendments of 1992, Pub.L. No. 102-325 Sec. 481(b)(3), 106 Stat. 448, 611 (1992) (codified at 20 U.S.C. Sec. 1088(b)).
 
 
 5
 Following the 1992 amendments the Department engaged in a negotiated rulemaking and on February 10, 1994 published a proposed rule that included a regulation implementing the new statutory mandate that 15% of an eligible school's "revenues" be from non-federal sources. Institutional Eligibility Under the Higher Education Act of 1965, As Amended; Proposed Rule, 59 Fed.Reg. 6445, 6448-50 (1994). At that time the Department explained that the term "revenues", as used in the regulation, included "tuition and fees plus revenues from other activities carried out by the institution that are necessary to the education or training programs offered by the institution." Id. at 6448-49.[2]
 
 
 6
 On April 29, 1994 the Department published a final rule that adopted the same general definition of "revenues" but with one important refinement. The final rule limited revenues to income "generated by the institution from: Tuition, fees, and other institutional charges for students enrolled in eligible programs as defined in 34 CFR 668.8; and activities conducted by the institution, to the extent not included in tuition, fees, and other institutional charges, that are necessary for the education or training of its students who are enrolled in those eligible programs. " Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Final Rule, 59 Fed.Reg. 22,323, 22,328 (1994) (codified at 39 C.F.R. Sec. 600.5(d)(1)) (emphasis added). Thus, under the Department's final regulation, revenues generated from programs that are ineligible for title iv funding are not counted in determining whether the school meets the new 15% eligibility criterion.
 
 
 7
 The appellants challenged the Department's definition of "revenues" in the district court. The district court granted summary judgment in the Department's favor, characterizing the final regulation as "reasonable" and as "a 'logical outgrowth' of the proposed regulations." Career College Ass'n v. Riley, C.A. No. 94-1372, slip op. at 12-14 (D.D.C. July 19, 1994) (quoting Association of Accredited Cosmetology Schools v. Alexander, 774 F.Supp. 655, 660-61 (D.D.C.1991)). The appellants seek reversal of the judgment on two grounds.
 
 
 8
 The appellants first assert the Department failed to sufficiently explain its reasons for limiting revenues to those generated through eligible programs. While a rulemaking agency must "adequately explain its result," this requirement is not "particularly demanding." Public Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C.Cir.1993). Thus, "Courts will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)). Such is the case here.
 
 
 9
 The Department explained its view of the purpose of the 15% requirement in the proposed rule:
 
 
 10
 The Secretary believes that the purpose of the new statutory criterion is to require proprietary institutions to attract students based upon the quality of their programs, not solely because the institutions offer Federal student financial assistance. Thus, under the statute, these institutions must attract students who will pay for their programs with funds other than Title IV, HEA program funds.
 
 
 11
 59 Fed.Reg. at 6448. The appellants have never disputed this characterization of Congress's intent but challenge only the Department's conclusion, first expressed in the final rule, that the intent can best be carried out if the total "revenues" counted are limited to those received from programs that "qualify as eligible programs." 59 Fed.Reg. at 22,327. It is reasonable to infer, however, as the Department has done, that when Congress added the 15% requirement it intended to ensure higher quality in the very programs it was subsidizing under that title, namely the eligible ones. Yet, if income from ineligible programs is included in the total revenues, as the appellants wish, there is no assurance the intended amelioration will occur since trade schools will then be under no particular pressure to maintain or improve the quality of their eligible programs. So long as they can obtain sufficient revenues from ineligible programs to satisfy the 15% requirement, they will continue to receive title iv funding regardless of the caliber of their title iv eligible programs. Thus, we conclude the Department's definition of "revenues" rests on a permissible construction of the 1992 Amendments and must therefore be upheld. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984)).
 
 
 12
 The appellants also argue that the Department's restrictive definition of "revenues" is inconsistent with Congress's intent in enacting other provisions of the 1992 Amendments that reduce existing financial assistance limitations and permit increased funding of a student's post-secondary education. We perceive no such conflict. That Congress may have desired to increase the maximum funding level for an individual eligible student does not negate the purpose of the 15% requirement to limit the maximum percentage of funding a for-profit trade school can receive from federal sources. To the extent that there may be, as the appellants contend, some tension between the goals of the different provisions, it is the inevitable result of Congress's separate enactments and not our concern.
 
 
 
 [1]
 The school had to (1) "provide[ ] an eligible program of training to prepare students for gainful employment in a recognized occupation," (2) meet the first two requirements of 20 U.S.C. Sec. 1141(a) (i.e. it had to admit only students with a high school degree or its equivalent and be authorized by the state to provide post-secondary education); (3) not meet the fourth requirement of Sec. 1141(a) (i.e. not be a public or non-profit institution), (4) be accredited by an approved nationally recognized accrediting agency or association and (5) have been in existence for at least 2 years. 20 U.S.C. Sec. 1088(b)
 
 
 [2]
 As the Department explained in its proposed rulemaking, the definition would include, for example:
 --Revenues produced by a restaurant that is owned and operated by a culinary institution where the institution's students purchase the food, cook the meals, or wait on the tables,
 --Revenues produced by a theater that is owned and operated by an institution that provides training in acting, music, or dance where the artistic endeavors that produce the revenues are performed by the institution's students or where the theater is run by the institution's students,
 --Revenues produced by an auto mechanic shop that is owned and operated by an institution providing auto mechanic training where the institution's students repair vehicles.
 
 
 [59]
 Fed.Reg. at 6449